IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

THOMAS SCOTT, JR.           )
                            )
    v.                      )    NO: 3:17-0868
                            )
JUSTON MARTIN, et al.       )

**TO:**   Honorable Aleta A. Trauger, District Judge

### R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered May 31, 2017 (Docket Entry No. 4), the Court referred this action to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

On March 1, 2018, an evidentiary hearing was held before the undersigned. For the reasons set out below, the undersigned respectfully recommends that this action be dismissed as to all claims and Defendants.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Thomas Scott, Jr. ("Plaintiff") is a convicted inmate within the custody of the Tennessee Department of Correction ("TDOC") who is currently confined at the Whiteville Correctional Facility in Whiteville, Tennessee. On May 19, 2017, he filed this lawsuit *pro se* and *in forma pauperis*, seeking damages under 42 U.S.C. § 1983 based on allegations that his civil rights were violated in April 2017 while he was confined as a pretrial detainee in the Sumner County Jail ("Jail") in Gallatin, Tennessee.

In a fairly sparse complaint, Plaintiff alleges that, on April 15 or 16, 2017, he was in his cell in the "lockdown" unit at the Jail when:

> Officer Martin opened my door unexpectedly, assaulted me verbally and physically, pushed me then sprayed me for no rightous (sic) reason, after that I was kneed by Officer Hunt then sprayed excessively by Lt. Riker and John Doe and John Doe 2, in the hallway. As I was placed in a restraint chair Officer John Doe choked me twice intentional I think his back was to the camera.

*See* Complaint (Docket Entry No. 1). Plaintiff further alleges that he did not receive medical attention when he requested it after the incident. *Id*. He alleges that he "passed out" in his cell later that night and awoke with medical staff around him but contends that this medical visit was not recorded in his medical records. *Id*. Plaintiff finally alleges that Jail Sgt. Keith Bean refused to permit him to press criminal charges on the officers who were involved in the incident. *Id*.

Upon initial screening of the complaint pursuant to 28 U.S.C. § 1915(e)(2), the Court issued process to Jail Officers Juston Martin ("Martin") and Justin Hunt ("Hunt") and Jail Lt. Adriel Riker ("Riker") (hereinafter referred to collectively as "Defendants") on Plaintiff's claim that excessive force was used against him in violation of his Fourteenth Amendment rights as a pretrial detainee.[1] *See* Docket Entry No. 4 at 4. Plaintiff's claim that he received constitutionally inadequate medical care and his claim against Sgt. Keith Bean were dismissed. *Id*. at 5.

After Defendants filed a joint answer, a scheduling order was entered and the parties were provided with a time period within which to engage in discovery and file pretrial motions. *See*

---

[1] Although Plaintiff also listed two "John Doe" defendants on the excessive force claim, Plaintiff has not identified these individuals and they have never been served with process. Accordingly, they are subject to dismissal under Rule 4(m) of the Federal Rules of Civil Procedure because of lack of service.

2

Docket Entry Nos. 13 and 16. No dispositive motions were filed, and there are currently no motions pending in the case.

## II. FACTUAL FINDINGS

Plaintiff proceeded *pro se* and testified at the evidentiary hearing. Although Plaintiff was specifically advised in the scheduling order that he could request witnesses at the hearing, *see* Docket Entry No. 16 at 3, he did not request the attendance of any witnesses. Each of the three Defendants testified, and Plaintiff was given the opportunity to cross-examine them. Based on the testimony and evidence presented at the hearing, including the video of the incidents in question[2], and on the entire record, the Court makes the following factual findings and notes any relevant factual disputes.

On April 16, 2017, Plaintiff was a pretrial detainee at the Jail and was housed in a single man cell in "Tower 3C Pod." This housing pod is a "lock down" or restricted unit in which inmates are permitted to be out of their cell for only one hour a day. Per Jail policy, only a single inmate at a time is allowed to be in the housing pod's common area.

The evidence showed that Plaintiff was involved in a physical altercation with Jail officers on the evening of April 16, 2017. Two security cameras in the housing unit recorded the event. *See* Defendants' Exhibit #1. At approximately 10:14 p.m., Martin was a correctional officer in Tower 3C and was passing out shaving razors to inmates in their cells. Although Plaintiff testified that Martin should have passed the razors through the "pie flap" opening in the doors instead of opening the cell doors, there is no evidence that Jail staff were required to follow any specific procedure

---

[2] There are three recordings of the events at issue, recorded in timed intervals and consisting of two videos of Plaintiff's housing pod and one video of a hallway at the Jail. For ease of reference and clarity, the videos are referred to herein in the singular.

regarding the manner in which razors are passed out in Tower 3C, and the security video shows Martin opening the doors of four other cells for several seconds, and even briefly entering some of the cells, prior to going to Plaintiff's cell.

Martin opened Plaintiff's cell door to provide him with a razor and remained at the doorway of the cell for approximately 20 seconds with the door only slightly opened and with Plaintiff standing inside the cell and in the doorway. Tense words were exchanged between the two men after Martin opened Plaintiff's cell door. Plaintiff testified that Martin was "hostile" because of an "earlier conversation" the two men had, and Martin testified that Plaintiff was making sexually suggestive comments to him. Plaintiff placed himself at the entrance to the cell and blocked the door from being shut. After Plaintiff refused to step back from the doorway, Martin admits that he sprayed Plaintiff with a chemical agent. Plaintiff then charged out of the cell into the common area, threw punches at Martin, grabbed Martin around the head and neck and wrestled Martin to the floor, where Plaintiff continued to hold Martin by the head and neck and punch him. The incident lasted for approximately 30 seconds, during which time Martin struggled with Plaintiff but was unable to extract himself from Plaintiff's hold. Other officers eventually entered the housing pod in response to an officer assistance call that had been placed by another officer at the Jail. Although no evidence was presented about the height and weight of Plaintiff and Martin, the Court, based upon visual observation of both men during the hearing, finds that Plaintiff is noticeably larger than Martin.

Officers Hunt, Riker, Joshua Eyrich ("Eyrich") and f/n/u Delaney responded as a group to the assistance call. *See* Jail Incident Report Packet (Defendants' Exhibit No. 3). Hunt was the first officer to enter the housing pod and he quickly rushed toward Plaintiff and struck Plaintiff in the head with his knee, dislodging him from the hold that Plaintiff had on Martin. Once Martin was free

from Plaintiff's grasp, he left the housing pod. One of the responding officers lay on top of Plaintiff in an attempt to gain control of him while the other officers attempted to place restraints on Plaintiff. Plaintiff did not quickly submit to being handcuffed. While the security video do not clearly show Plaintiff being sprayed with a chemical spray, Riker admitted to twice spraying Plaintiff with a chemical spray because Plaintiff was refusing to comply with orders to submit. Plaintiff testified that the officers were "egging" each other on during the incident and that he was hit in the head and also had his fingers bent. Plaintiff was eventually placed in handcuffs and removed from the common area. It took approximately 80-90 seconds for the officers to gain control of Plaintiff and place him in restraints.

After Plaintiff was subdued, he was escorted to a hallway without incident. A security camera recorded the events that occurred in the hallway. *See* Defendants' Exhibit #1. Once in the hallway, he was placed in a restraint chair by several officers. Restraining straps were placed around his waist, on his legs and, when the handcuffs were removed, restraining straps were placed on his wrists. Chest and shoulder restraints were also used. Although Plaintiff did not resist being placed in the chair or having the waist, leg, and wrist straps placed on him, he resisted having the chest and shoulder restraints placed on him and he stayed in a forward leaning position, testifying that it was easier to breath in that position. The officers then forcefully pushed and pulled Plaintiff's shoulders back and placed those restraints on him. Plaintiff testified that he was choked by Hunt during this time. Hunt admits to holding onto Plaintiff's jaw and pulling his head back toward the chair as part of the effort to get Plaintiff's chest upright so that the chest and shoulder straps could be placed on him but denies choking Plaintiff as alleged. The security video does not show Plaintiff being choked

5

by Hunt or any other officer. Once Plaintiff was fully restrained in the chair, medical personnel and officers wiped his face with towels and a fan was brought in to blow air on his face.

As indicated in medical records that were filed as late filed exhibits, both Martin and Plaintiff were injured during the incident. *See* Medical Records (Defendants' Late Filed Exhibit # 4 and Docket Entry Nos. 30-32. Martin's medical records show that he was treated during April 2017 for a possible concussion, rib and shoulder contusions and pain, and mild swelling and pain on the left side of his face. *See* Docket Entry No. 31. Plaintiff's medical records do not contain any notations of an examination by medical staff in the immediate aftermath of the incident. *See* Docket Entry No. 30. However, he was seen by medical staff four times over the next two days, twice on April 17 and twice on April 18, in response to his complaints about dizziness, passing out in his cell, swelling to his face, soreness, spitting blood, urinating blood, and post-traumatic stress. *Id*. at 4-5. No swelling or bruising was noted by the medical staff, no blood was detected in his urine sample, and nothing medically remarkable was noted. *Id*. He was examined by a physician on May 4, 2017, who noted complaints by Plaintiff about neck soreness and migraines and prescribed seven days of Ibuprofen and a muscle relaxer for Plaintiff, but noted no other remarkable symptoms or findings. *Id*. at 3. The seven day prescription for Ibuprofen was continued on May 25, 2017, and June 3, 2017. *Id*. at 1-2. Plaintiff's medical records also show that he was examined by a nurse on May 15, 2017, in response to complaints about a sore neck and was again prescribed seven days of Ibuprofen. *Id*. at 13-14. Plaintiff filed 12 sick call slips between April-July 2017 with various medical issues that he attributed to the April 16 incident and it appears that he may have been seen by the medical staff on April 23, 2017, June 3, 2017, July 5, 2017, and July 13, 2017, but there are no progress reports or medical records in the record regarding these visits. *Id*. at 6-12 and 15-19.

6

Jail Incident Reports about the incident were completed by Martin, Hunt, Riker, and Eyrich. *See* Defendants' Exhibit No. 3. Although the record does not contain evidence showing that Plaintiff was charged with an internal Jail disciplinary infraction as a result of the incident, he was criminally charged with aggravated assault. *See* Plaintiff's Exhibit #1. However, the record does not contain information about the outcome of this criminal charge. Plaintiff filed a grievance about the incident, requesting to press charges against Martin, and also sought to pursue a complaint under the Prison Rape Elimination Act ("PREA"). Jail Sgt. Keith Bean denied Plaintiff's grievance and, after investigation, found that Plaintiff's PREA complaint was unfounded. *See* Plaintiff's Exhibit No. 1.

### III. 42 U.S.C. § 1983 AND THE FOURTEENTH AMENDMENT

42 U.S.C. § 1983 does not confer rights upon an individual. Instead, it is a vehicle to seek a remedy for violations of constitutional rights guaranteed elsewhere. *Graham v. Conner*, 490 U.S. 386, 393-94 (1989). A claim brought under 42 U.S.C. § 1983 requires Plaintiff to show: 1) the deprivation of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was caused by a person acting under color of state law. *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). There is no dispute that Defendants acted under the color of state law regarding the events at issue.

As a pretrial detainee at the Jail, Plaintiff's constitutional rights at issue arose from the Due Process Clause of the Fourteenth Amendment. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Leary v. Livingston Cty.*, 528 F.3d 438, 443 (6th Cir. 2008). The Fourteenth Amendment protects a pretrial detainee from the use of excessive force that amounts to punishment. *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015). Such

punishment can consist of actions taken with an "expressed intent to punish" or, in the absence of an expressed intent to punish, actions that are not "rationally related to a legitimate nonpunitive governmental purpose" or that "appear excessive in relation to that purpose." *Id*. at 2473 (citing *Bell v. Wolfish*, 441 U.S. 520, 538 and 561 (1979)). In reviewing whether excessive force has been used against a pretrial detainee, the inquiry should not take into account the subjective state of mind of a defendant but should instead focus on whether the force used against a pretrial detainee was "objectively unreasonable" under the particular facts and circumstances of each case. *Id*. at 2472-73. The following considerations may prove relevant to a determination of excessive force: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*. at 2473. In making the determination, the courts must account for the "'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id*. (*Bell v. Wolfish quoting*, 441 U.S. 520, 540 (1979)).

## IV. CONCLUSIONS

Pursuant to 28 U.S.C. § 636(b)(1)(B), the Magistrate Judge may conduct an evidentiary hearing upon a prisoner petition challenging his conditions of confinement and make proposed findings of fact and recommendations for disposition to the District Judge. The purpose of the evidentiary hearing is to inquire into the factual basis such a plaintiff's claims. *Johnson v. Bi-State*

8

*Justice Ctr.*, 12 F.3d 133, 135-36 (8th Cir. 1993). *See Hickerson v. Koepp*, 107 F.3d 11, 1997 WL 56961 (6th Cir. 1997) (table decision) (magistrate judge made recommendation for dismissal of prisoner plaintiff's claims after conducting an evidentiary hearing into the merits of the claims); *Freeman v. Harris*, 2013 WL 2297029 (M.D.Tenn. May 24, 2013) (Trauger, J.) (adopting report and recommendation made by magistrate judge after evidentiary hearing was conducted into merits of a prisoner's Section 1983 claims in a case in which no motion for summary judgment had been filed); *Lyell v. Schachle*, 1996 WL 391557 (M.D.Tenn. Feb. 28, 1996) (Higgins, J.) (same).

In making this inquiry, the Court has construed the evidence in the light most favorable to Plaintiff, has given Plaintiff the benefit of all reasonable inferences that can be drawn from this evidence, and has not made credibility determinations. After review of the evidence presented at the hearing and of the entire record in this action, the Court finds that the evidence in support of Plaintiff's claims is so one-sided in favor of Defendants that the evidence would not permit any reasonable finding that Defendants violated Plaintiff's constitutional rights as alleged. Any factual questions that exist do not rise to the level of genuine issues of material fact that require resolution of this case at trial, and Defendants are entitled to dismissal of Plaintiff's claims against them.[3]

Plaintiff brings four claims: 1) a claim that Martin came to his cell and unexpectedly opened the cell door, assaulted him, pushed him, and sprayed him with a chemical spray in his cell; 2) a

---

[3] At the evidentiary hearing, the Court advised the parties that the purpose of the hearing was to determine whether there is sufficient disagreement as to the evidence on Plaintiff's Section 1983 claims that the claims are required to be submitted to a jury. *See* Hearing Transcript (Docket Entry No. 33) at 4-5 and 74. However, review of the record indicates that neither party in the action has requested a trial by jury, *see* Complaint (Docket Entry No. 1) and Answer (Docket Entry No. 13), and neither party spoke up at the hearing to state that a jury trial had not been requested. The Court has addressed Plaintiff's claims as if a jury trial had been demanded and has reviewed the claims for the presence of genuine issues of material fact that require the resolution of the claims at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

claim that Hunt unnecessarily kneed him in the head; 3) a claim that Riker excessively sprayed him with a chemical spray; and, 4) a claim that Hunt choked him while he was in a restraint chair. Plaintiff's hearing testimony presents a modicum of evidence in favor of each of these claims. However, the security video of the events at issue provide overwhelming evidence that contradicts his testimony and requires the dismissal of these claims. When events are controverted by the parties in a situation in which the events have been videotaped and recorded, the Court should view the events in light of the videotape and may rely upon facts as depicted by the videotape when the facts could only be viewed one way. *See Scott v. Harris*, 550 U.S. 372, 378-381 (2007); *Latits v. Phillips*, 878 F.3d 541, 547 (6th Cir. 2017).

The security video controvert Plaintiff's claim that Martin came to his cell, opened the door and assaulted him by pushing him and spraying him with a chemical spray in an unconstitutional manner. Initially, the video rebut Plaintiff's intimation that Martin, by opening his cell door, somehow acted in an irregular manner that would infer Martin was singling Plaintiff out for abuse. To the contrary, the video show that Martin opened the cell doors of several inmates' cells to pass out razors prior to opening Plaintiff's cell door. Plaintiff admits to being verbally combative with Martin at the time that he and Martin were speaking at his cell, and the video show Plaintiff blocking the open doorway of the cell and then rushing out of his cell to physically attack Martin. The video also do not show Martin either pushing Plaintiff as alleged or initiating a physical confrontation with Plaintiff. Martin's use of a chemical spray against Plaintiff was minimal at best and nothing shown on the video evidences any conduct by Martin that was objectively excessive. Given the video evidence that is before the Court, the only conclusion that could be reached by a reasonable trier of fact is that Martin, in light of the facts and circumstances that existed at the time, acted in a manner

10

Case 3:17-cv-00868   Document 39   Filed 08/12/20   Page 10 of 13 PageID #: 246

that was objectively reasonable and that did not violate Plaintiff's constitutional right to be free from the use of excessive force.

The security video controvert Plaintiff's allegation that Hunt kneed him in the head in a manner that was constitutionally excessive. To the contrary, the events shown on the video lead to an opposite conclusion. The video show that Plaintiff was involved in a violent struggle and altercation with Martin that involved Plaintiff grabbing Martin by the head and neck and holding him on the floor of the common area. After Hunt arrived on the common areas in response to a call for assistance, he quickly intervened by delivering a single knee strike to Plaintiff's head, which succeeded in causing Plaintiff to release Martin and permitted Martin escape from Plaintiff's hold. The only conclusion that can reasonably be reached from the evidence before the Court is that Plaintiff presented a serious security risk which required immediate action by Hunt. The undisputed evidence is that such a knee strike is one of the methods used by officers in such a situation, and there is no evidence that Hunt's use of the knee strike was unnecessary or excessive under the circumstances. There is no evidence before the Court which would support a reasonable conclusion that Hunt, in light of the facts and circumstances that existed at the time, acted in an objectively unreasonable manner and violated Plaintiff's constitutional right to be free from the use of excessive force when he struck Plaintiff with his knee during the incident.

The security video do not support Plaintiff's allegation that Riker excessively sprayed him with a chemical spray during the altercation in the housing pod. To the contrary, the video show Plaintiff physically struggling on the floor with Martin when Riker, who was responding to a call for officer assistance, arrived in the housing pod. The video show Plaintiff continuing to struggle with the officers for several seconds after Plaintiff releases Martin and while the officers attempt to

11

Case 3:17-cv-00868    Document 39    Filed 08/12/20    Page 11 of 13 PageID #: 247

subdue Plaintiff and place restraints on him. There is nothing on the video that shows that Riker used a chemical spray on Plaintiff in a manner that was excessive or unnecessary. There is no evidence before the Court which would support a reasonable conclusion that Riker, in light of the facts and circumstances that existed at the time, acted in an objectively unreasonable manner and violated Plaintiff's constitutional right to be free from the use of excessive force when he used a chemical spray on Plaintiff during this incident.

Finally, the security video from the hallway in which Plaintiff was placed in the restraint chair video shows nothing remarkable and does not support Plaintiff's allegation that Hunt choked him while he was in the restraint chair. To be sure, the video shows that the attending officers were required to use some measure of physical force in order to get Plaintiff into a position in which the chest and shoulder restraining straps could be placed upon him. Part of this force consisted of Hunt holding onto Plaintiff by the lower jaw and neck area and forcefully pulling his head back to the chair. While the Court does not doubt that this was unpleasant experience for Plaintiff and may have made him feel like he was being choked, there is nothing on the video that would support a reasonable conclusion that Hunt acted in an objectively unreasonable manner and violated Plaintiff's constitutional right to be free from the use of excessive force when he held Plaintiff by the jaw and neck and pulled his head back. Plaintiff's contention during the evidentiary hearing that the alleged choking occurred during the few seconds when the view of Plaintiff on the security video feed was blocked by other officers who were assisting in placing the chest and shoulder straps on Plaintiff raises, at best, only a metaphysical doubt as to the material facts surrounding this event, which is not sufficient to raise a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Babcock & Wilcox Co. v. Cormetech, Inc.*, 848 F.3d 754, 758 (6th Cir.

2017).  The only conclusion that reasonable trier of fact could reach after viewing the security video is that the events alleged by Plaintiff are completely contradicted by the events depicted on the security video.

## RECOMMENDATION

Based on the foregoing, it is respectfully RECOMMENDED that this action be DISMISSED WITH PREJUDICE because there are no facts upon which a reasonable trier of fact could find in favor of Plaintiff on his claims.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made.  *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a).  Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Any response to the objections must be filed within fourteen (14) days after service of objections.  *See* Federal Rule 72(b)(2).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

13

Case 3:17-cv-00868   Document 39   Filed 08/12/20   Page 13 of 13 PageID #: 249